**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Division at Fort Lauderdale**
Case No.: _____

KEVIN P. MONAHAN and
MICHAEL T. MONAHAN

v.

HAMILTON HOME LOANS, INC.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs KEVIN P. MONAHAN and MICHAEL T. MONAHAN (hereinafter "Plaintiffs" or the "Monahans"), brings this action against Defendant Hamilton Home Loans, Inc. ("Defendant" or "HHL") and states:

## INTRODUCTION

1. This is an action brought by consumers for Defendant's violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), and its implementing regulations, and the Florida Consumer Collections Practices Act (FCCPA), Fla. Stat. Fla. Stat. § 559.72, *et seq.* for erroneous and unfair debt collection practices.

2. Specifically, Plaintiffs seek the remedies as provided in RESPA at 12 U.S.C. § 2605(f)(1) for Defendant HHL's failure to comply with 12 U.S.C. §§ 2605(k)(1)(C) through (E) and 12 C.F.R. §§ 1024.35 and 1024.36 and as provided under the FCCPA.

3. All conditions precedent to the filing of this action have been satisfied.

1

## JURISDICTION AND VENUE

4. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA), the Florida Consumer Collections Practices Act (FCCPA), Fla. Stat. § 559.72, *et seq.* and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692k(d), *et seq.*

5. Moreover, this case is a civil action arising under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

6. Venue in this District is proper as Plaintiffs reside in Broward County, Florida and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

## PARTIES

7. At all times material hereto, Defendant HHL was and is a Florida Profit Corporation with its principal place of business located at 1551 Sawgrass Corporate Parkway, Suite 300, Sunrise Florida 33323. Defendant HHL is duly licensed to transact business in the State of Florida and lists its registered agent as Tammy Scott, 1551 Sawgrass Corporate Parkway, Suite 300, Sunrise, Florida 33323.

8. At all times material hereto, Defendant HHL is and was a loan servicer as that term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b) as well as a creditor and debt collector as provided under the FCCPA.  Moreover, HHL services the loan obligation which is secured by a mortgage upon the Plaintiffs' primary residential

property, located at 4432 SW 28th Terrace, Fort Lauderdale, Florida 33312 (the "Subject Property").

9.  At all times material hereto, Plaintiffs Kevin P. Monahan (son) and Michael T. Monahan (father) owned and continue to own the subject property, which is located in Broward County, Florida.

10. The Subject Property is a personal residential single-family home structure where Plaintiff Kevin P. Monahan resides.

11. At some point in time prior to the violations alleged *infra*, HHL was contracted to service the subject loan.

12. The subject loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b) and referred to by Defendant HHL as account number ******6359.

13. The Plaintiffs are each a natural person residing in Fort Lauderdale, Florida.

## **RESPA AND REGULATION X**

14. The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency that's authorized by Congress to supervise and enforce compliance of RESPA.  The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA, and the respective implementing regulations.

15. RESPA permits a borrower (or an agent of a borrower) to submit a "qualified written request" ("QWR") to the servicer of the borrower's "federally related mortgage loan." 12 U.S.C. § 2605(e)(1).  In sending a QWR to a mortgage loan

servicer ("servicer"), a borrower can either request information from the servicer, or assert that the borrower's account is in error. 12 U.S.C. § 2605(e)(1).

16. RESPA provides that upon receipt of a QWR "a servicer of a federally related mortgage loan…shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).

17. As amended, it is a violation of RESPA for a servicer to "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).[1]

18. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

19. Moreover, in January 2013, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute 'servicing,' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

Stat. 1376 (2010)—the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States—known as "Regulation X" and codified as 12 C.F.R. § 1024.1, et seq.  Regulation X became effective on January 10, 2014.

20. Importantly, unlike QWRs, RFIs do not need to relate directly to "servicing" in order to trigger the aforementioned duties under Regulation X.   The CFPB specifically addressed the "servicing" issue in its commentary on 12 C.F.R. § 1024.36(f): "While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, it does not limit information requests to those related to servicing." 78 F.R. 10696, 10761 (emphasis added).

21. Relative to "notice of errors" ("NOEs"), Regulation X provides that "[a] servicer shall comply with the requirements of section 12 C.F.R. § 1024.35( for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred…A qualified written request that asserts an error relating to a servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to an NOE with respect to such qualified written request." 12 C.F.R. § 1024.35(a).

22. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to an NOE by either "correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the

5

correction, and contact information, including a phone number, for further assistance" or; "conducting a reasonable investigation and providing the borrower with written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a phone number, for further assistance."

23. The CFPB's authority to prescribe such regulations under Section 2605(k)(1), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

## STATEMENT OF FACTS

24. On or around April 26, 2019, Plaintiffs Kevin Monahan and Michael Monahan purchased their single-family residence in Fort Lauderdale, Florida.

25. On or about May 10, 2019, Plaintiffs obtained a mortgage on their home, which was secured through a May 10, 2019 mortgage loan note with Defendant's principal, Hamilton Group Funding, Inc. ("HGF").  A copy of the May 10, 2019 Mortgage Agreement is attached hereto as Exhibit "A".

26. The closing documents reflect that Plaintiffs' mortgage loan did not have an escrow account for taxes and insurance. In fact, Plaintiffs paid the annual insurance

payment in advance at the time of closing. A copy of the closing documents are attached hereto as Exhibit "B".

27. Despite the fact that Plaintiffs prepaid for the annual insurance and did not authorize the collection and payment of the same through an escrow account, HHL began charging Plaintiffs for insurance each month as an escrow charge. These charges caused Plaintiffs monthly mortgage payment to exceed what Plaintiffs agreed upon through the loan documents.

28. Plaintiffs attempted to notify HHL of the errors via telephone on numerous occasions. HHL agreed to correct the errors, but failed to do so in a timely manner, causing Plaintiffs payments to be late and Plaintiffs to  incur unwarranted delinquency related fees and charges.

29. This pattern continued for several months until Plaintiffs finally paid the erroneous amounts under protest in order to mitigate continued harm, prevent the imposition of further fees, and prevent the subject property from being foreclosed.

30. Thereafter, Plaintiffs hired undersigned counsel to investigate and seek correction of HHL's payment processing and escrow errors.

31. On or before April 9, 2021, HHL, received the Plaintiffs' first Qualified Written Request ("QWR") or Request for Information ("RFI") pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 and/or it's implementing Regulations, Regulation X, 12 C.F.R. § 1024.36 (collectively, the "1st RFI").  Through the 1st RFI, Plaintiffs requested items from the loan's "servicing file"[2] including as all servicing notes, call logs and/or communications related to HHF's servicing of the

---

[2] See 12 C.F.R. § 1024.38(c)(2)(i)-(iv).

subject mortgage loan.  Through the 1st RFI, Plaintiffs also requested the alleged

mortgage loan owner/assignee's identity and contact information.

32. Also on or before April 9, 2021, Defendant HHL received the Plaintiffs' first Notice

of Error (the "1st NOE").  Through the  1st NOE, Plaintiffs alleged thatHHL was

erroneously "collecting both homeowners and flood insurance" as escrow items,

when no escrow account was ever agreed upon by the parties to the mortgage

agreement – an error in which HHL admitted to in its April 28, 2021 insufficient

response to the Plaintiffs' April 7, 2021 1st NOE.  A copy of the Plaintiffs' April 7,

2021 1st RFI and 1st NOE (collectively, "1st RFI/NOE"); and a copy the United

States postal service's April 9, 2021 delivery confirmation of same, are attached

hereto as Exhibits "C" and "D", respectively.

33. Although it admitted to the violations alleged in the Monahan's April 7, 2021 NOE,

the Defendant HHL still tried to minimize the error as being "inadvertently"

committed.  However, Regulation X, 12 C.F.R. § 1024.35 does not provide an

"exception" and/or an "exemption" to servicers such as HHL, that "inadvertently"

commit errors in violation to its provisions. A copy of Defendant HHF's April 28,

2021 response to the Plaintiffs' 1st RFI/NOE, is attached hereto as Exhibit "E".

34. As stated earlier, HHL responded to the Plaintiffs' 1st RFI/NOE on April 28, 2021.

However, the Defendant HHL's April 28, 2021 response[3] failed to provide

Plaintiffs with, among other items, contact information for the alleged owner of

---

[3] In its April 28, 2021 response, Defendant claims that "due to size, copies of the requested documents were emailed to the email address on file Monahan.108@gmail.com".  Not only has Defendant failed to attach an evidence whatsoever that would substantiate its claim that it "emailed" the requested documents to Monahan.108@gmail.com, the Plaintiff has no record of ever receiving the requested documents via email, or any other means.

Plaintiffs' mortgage loan, and call/conversation notes as requested in Plaintiffs' April 7, 2021 1st RFI.  Likewise, as of sending the response, HHL had failed to correct the errors identified in the 1st NOE and failed to provide Plaintiffs with written notification of the correction and the effective date of said correction.

35. Although HHL's response to Plaintiff's first NOE stated that it refunded certain funds to Plaintiffs due to their error, the refund did not cure the damages incurred by Plaintiffs caused by HHL's erroneous debt collection and erroneous credit reporting.

36. Additionally, HHL stated that the credit reporting was accurate because Plaintiffs made late payments, failing to acknowledge that Plaintiffs' payments were only late because HHL was attempting to collect erroneously excessive amounts and was waiting for HHL to correct the errors as indicated.

37. Importantly, HHL's April 28, 2021 response does not include a statement that it [HHL] has determined that "no error occurred".  To the contrary, a close reading of its April 28, 2021 response, reveals that HHL actually admits that an error occurred.

38. Since Defendant HHL failed to sufficiently respond to the Plaintiffs' April 7, 2021 RFI, the Plaintiffs, on or about September 11, 2021, sent HHL a second RFI and a second NOE (the "2nd RFI/NOE").  In their 2nd RFI/NOE, the Plaintiffs made a second request for items from their "servicing file", such as all servicing notes, call logs and/or communications related to HHF's servicing of the subject mortgage loan.  The Monahan's September 11, 2021 2nd RFI also made a second request for the identity and for contact information regarding the subject mortgage's loan owner/assignee.  HHL received the Plaintiffs' 2nd RFI/NOE on September 15, 2021

but failed to provide the requested information and failed to conduct any investigation whatsoever of the errors alleged through the 2nd NOE. A copy of the Plaintiffs' September 11, 2021 2nd RFI/NOE; and a copy of the United States postal service's September 15, 2021 delivery confirmation of the same, are attached hereto as Exhibits "F" and "G", respectively.

39. Since they did not receive the information requested in their September 11, 2021 2nd RFI, and since Defendant HHL failed to conduct any investigation whatsoever of their September 11, 2021 2nd NOE, the Plaintiffs, on or about December 10, 2021 sent HHL a third request for information and a third notice of errors (collectively, the "3rd RFI/NOE").  In their 3rd RFI/NOE, the Plaintiffs' made a third request for the identity and for contact information regarding the subject mortgage's loan owner/assignee.  HHL received the Plaintiffs' 3rd RFI/NOE on December 21, 2021 but failed to provide the requested information, and failed to conduct any investigation whatsoever, of the Monahans' December 10, 2021 3rd notice of error. A copy of the Plaintiffs' December 10, 2021 3rd RFI/NOE (which also included the FCRA notices referenced in Paragraphs 40 - 43 herein); and a copy of the United States postal service's December 21, 2021 delivery confirmation of same, are attached hereto as Exhibits "H" and "I", respectively.

40. During this time frame, HHL sent communications to Plaintiffs attempting to collect the erroneous amounts which were not due and owing.

41. During this entire time frame, Plaintiffs credit suffered due to the erroneous negative reporting by HHL. HHL's delay in correcting the errors combined with the erroneous negative reporting resulted in diminishment of credit for Plaintiffs

who were both denied credit due to HHL's errors. Thus Plaintiffs sent a notice pursuant to the ("FCRA") on December 15, 2021   with the 3rd NOE/RFI. Information concerning the credit denials was provided to HHL who failed to respond whatsoever.

42. Specifically, Plaintiff Kevin Monahan was denied the ability to refinance the subject loan at a lower rate.

43. Additionally, Plaintiff Michael Monahan received a credit reduction due to HHL's erroneous reporting, reducing his credit limit by over $100,000.00 on his longest standing credit account; he has no other negative reporting and is not overleveraged with other debt.

44. Defendant HHL has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605 and in Regulation X, 12 C.F.R. § 1024.35 and § 1024.36.

45. Additionally, Plaintiffs were harmed by HHL's failure to respond to, and/or reasonably investigate Plaintiffs' repeated NOEs.  This is evidenced by the fact that the Plaintiffs incurred costs relative to sending the NOEs - such as their time, postage, traveling, photocopying costs; and potentially, reasonable attorney's fees. Despite such costs, Plaintiffs still did not receive the information to which they were legally entitled to - pursuant to RESPA and Regulation X.  Indeed, when HHL "failed to do that which it was obligated to do [under RESPA and Regulation X]" in response to the Plaintiffs' NOEs, the time and expense associated with the Plaintiffs' submissions of the NOEs "metamorphosed into damages." *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 725 (S.D. Ohio 2014).

46. Had HHL properly and sufficiently responded to the Plaintiffs' April 7, 2021 first RFI and first NOE, then, the Monahans would not have needed to send HHL the September 11, 2021 2nd RFI/NOE, and/or the December 10, 2021 3rd NOE/RFIs.

47. Pursuant to 12 U.S.C. § 2605(f)(1), the Plaintiffs are entitled to actual damages as a result of Defendant's failure to comply with Regulation X and RESPA, including but not limited to: (1) photocopying costs and postage costs incurred in mailing the Plaintiffs' first notice of error; and (2) photocopying costs, postage costs, incurred as a result of having to send a notice of error due to Defendant's failure to adequately respond to Plaintiffs' first qualified written request.

48. Plaintiffs have also suffered actual damages in the form of emotional distress, anxiety, the constant fear of losing their home, worry, embarrassment, and anguish as a result of the ongoing failures of the Defendant to address the Monahans' RFIs and NOEs.

49. The Plaintiffs are entitled to statutory damages, as well as the costs of this action, together with a reasonable attorney's fee as determined by the court and pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT I

### VIOLATIONS OF RESPA
### (12 U.S.C § 2605(e); 12 U.S.C. § 2605(k)(1); 12 C.F.R. 1024.35(e))

50. Plaintiffs repeat and reallege paragraphs 1 through 49 with the same force and effect as though fully set forth herein.

51. As a servicer of a federally related mortgage loan, HHL must comply with any regulations implementing the provisions of RESPA. See 12 U.S.C. § 2605(k)(1)(E).

52. HHL is required to maintain policies and procedures that are reasonably designed to ensure that it can "provide accurate and timely disclosures to a borrower as required by Regulation X or other applicable law" and "provide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR 1024.38(a)(b)(1)(i),(iii).

53. Plaintiffs submitted their requests for information (RFIs) and notice of errors (NOEs) at issue to HHL in which Defendant received at the address that it has designated to receive such RFIs and NOEs.

54. Plaintiffs' RFIs/NOEs requested specific information related to their mortgage loan, and/or asserted that HHL committed specific errors related to the servicing of their loan, as contemplated by, *inter alia*, 12 U.S.C. § 2605(e)(2), 12 U.S.C. § 2605(k)(1)(C) and (E), 12 C.F.R. § 1024.35(e)(6), and/or 12 C.F.R. § 1026.36(c).

55. HHL failed to provide a substantive written response to Plaintiffs' repeated NOEs and failed to investigate and/or correct any of the errors asserted in Plaintiffs' Inquiries within the applicable timeframe of thirty (30) business days of receipt of such RFIs and NOEs - as required by 12 U.S.C. § 2605(k)(1)(D), 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35(e), and 12 C.F.R. § 1026.36(c). Instead, HHL simply ignored Plaintiffs' NOEs and their repeated RFIs.

56. HHL's failure to provide appropriate responses to Plaintiffs' NOEs regarding incorrect escrow charges within the applicable time frame constitutes a clear violation of the requirements of 12 U.S.C. § 2605(k)(1)(D) and (E); 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35(e), and 12 C.F.R. § 1024.36. Indeed, 12 C.F.R. §

1024.35(g) does not provide for any "exception" to HHL's duty to respond to Plaintiffs' notice or errors and repeated request for information.

57. Additionally, HHL repeatedly violated Regulation X, 12 C.F.R. § 1024.35(e)(3)(i)(A)-(B) by failing to timely correct (within 30 business days) Plaintiffs' April 7, 2021, September 11, 2021 and December 10, 2021 notice or errors, and thereafter providing Plaintiffs with a written notification of the correction and with other information; and/or by failing to conduct a reasonable investigation of said notice of errors, and thereafter, providing Plaintiffs with a written statement that it [HHL] has determined that no error has occurred, along with other statements mandated by 12 C.F.R. 1024.35(e)(3)(i)(B).

58. Plaintiffs were harmed because they incurred the expenses associated with sending the September 11, 2021 and December 10, 2021 Inquiries/NOEs. Plaintiffs also incurred the expenses associated with sending the April 7, 2021, September 11, 2021, and December 10, 2021 requests for information from their servicing file. Those expenses includes, but are not limited to: their time, postage cost, traveling cost, photocopying costs, and potentially reasonable attorney's fees etc. - but even after suffering those expenses, Plaintiffs still did not, and has not timely receive the information or responses to which they were legally entitled to, pursuant to RESPA and Regulation X.

59. Here, HHL is attempting to evade its legal obligations and is effectively stripping the Plaintiffs of their right to timely receive an accurate payoff statement, and their right to submit Inquiries and NOE's within, and subject to the protective framework of RESPA. Instead of timely complying with RESPA, Defendant HHL simply

disregarded its obligation to respond to, and/or investigate the September 11, 2021 and December 10, 2021 Inquiries/NOEs, and to timely provide Plaintiffs with requested information from their servicing file, as requested on April 7, 2021, September 11, 2021 and again on December 10, 2021.

60. As shown by the repeated violations alleged in this instant complaint, HHL's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiffs' rights.

61. As a result of its actions, HHL is therefore liable to Plaintiffs for actual damages, statutory damages, costs, and attorney fees. 12 U.S.C. §§ 2605(f)(1)-(3).

### COUNT II

### VIOLATION OF RESPA
### (12 U.S.C § 2605(e)(2) and 12 C.F.R. § 1024.36(d))

62. Plaintiffs repeat and reallege paragraphs 1 through 49 with the same force and effect as though fully set forth herein.

63. As a servicer of a federally related mortgage loan, HHL must comply with any regulation implementing the provisions of RESPA. See 12 U.S.C. § 2605(k)(1)(E).

64. HHL is required to maintain policies and procedures that are reasonably designed to ensure that it can "provide accurate and timely disclosures to a borrower as required by this subpart or other applicable law" and "provide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR 1024.38(a)(b)(1)(i),(iii).

65. Plaintiffs submitted a qualified written request ("QWR") to HHL in which Defendant HHL received on April 9, 2021, September 15, 2021, and again on December 21, 2021 at the address that it has designated to receive such QWRs.

66. Plaintiffs' repeated QWRs requested specific information related to their mortgage loan, as contemplated by, *inter alia*, 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and/or 12 C.F.R. § 1026.36(c). Moreover, Plaintiffs' QWR/RFI specifically requested documents from their "servicing file", including but not limited to "any notes created by" HHL's personnel reflecting communications with Plaintiffs about the subject mortgage loan account. See 12 C.F.R. § 1024.38(c)(2)(iii).

67. HHL has failed to provide a sufficient response, and/or any response whatsoever, to Plaintiffs' April 7, 2021, September 11, 2021 or their December 10, 2021 repeated QWRs. Thus HHL has failed to timely provide a substantive and/or sufficient response to Plaintiffs' QWRs, by failing to provide any or most of the information and/or documents Plaintiffs requested in their repeated QWRs, and to do so within the applicable timeframe of thirty (30) business days of receipt - as required by 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1026.36(d)(2)(i).

68. HHL's failure to provide a response to Plaintiffs' QWRs within the applicable timeframes of thirty (30) business days of receipt constitutes a clear violation of the requirements of 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.36(d)(2)(i)(B). Indeed, 12 C.F.R. § 1024.36, does not provide for any "exception" to HHL's duty to properly and sufficiently respond to Plaintiffs' QWRs.

69. Plaintiffs was harmed because they incurred the expenses associated with sending the September 11, 2021 and December 10, 2021 Inquiries/NOEs due to Defendant's

failure to sufficiently respond to Plaintiffs' April 7, 2021 QWR - such as their time, postage cost, traveling cost, photocopying costs, and potentially reasonable attorney's fees etc. - but still did not, and has not, timely receive the information or responses to which he was legally entitled, pursuant to RESPA and Regulation X.

70. Here, HHL is attempting to evade its legal obligations and is effectively stripping the Plaintiffs of their right to submit QWRs and to timely receive loss mitigation and other documents within, and subject to the protective framework of RESPA. Instead, HHL has simply disregarded its obligation to sufficiently respond to said QWR.

71. As shown by the repeated violations alleged in this instant complaint, HHL's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiffs' rights.

72. As a result of its actions, HHL is therefore liable to Plaintiffs for actual damages, statutory damages, costs, and attorney fees. 12 U.S.C. §§ 2605(f)(1)-(3).

## COUNT III
## VIOLATION OF RESPA

### (12 U.S.C. § 2605(k)(1)(D) and (E)); and 12 C.F.R. § 1024.36(d)(2)(i)(A))

73. Plaintiffs repeat and reallege paragraphs 1 through 49 with the same force and effect as though fully set forth herein.

74. As a servicer of a federally related mortgage loan, HHL must comply with any regulations implementing the provisions of RESPA. See 12 U.S.C. § 2605(k)(1)(E).

75. HHL is required to maintain policies and procedures that are reasonably designed to ensure that it can "provide accurate and timely disclosures to a borrower as

required by 12 C.F.R. § 1024 or other applicable law" and "provide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR § 1024.38(a)(b)(1)(i),(iii); 12 U.S.C. § 2605(k)(1)(C)-(E).

76. Pursuant to 12 U.S.C. § 2605(k)(1)(D) and 12 CFR § 1024.36(d)(2)(i)(A), Plaintiffs, on April 7, 2021, September 11, 2021, and again on December 10, 2021, submitted several requests for the identity, address, and other relevant contact information about the owner/assignee of the Plaintiffs' mortgage loan, in which Defendant HHL received on April 9, 2021, September 15, 2021 and on December 21, 2021.

77. Plaintiffs' repeated requests were for information related to their mortgage loan, and was for the purpose of them possibly avoiding foreclosure of their home as contemplated by 12 U.S.C. § 2605(k)(1)(C)-(E).

78. Nevertheless, HHL failed to provide a timely written response to Plaintiffs' April 7, 2021, September 11, 2021, and December 10, 2021 requests for the identity, address, and other relevant contact information about the owner/assignee of the Plaintiffs' loan, and therefore it violated RESPA, 12 U.S.C. § 2605(k)(1)(D), by failing to respond (within 10 business days from April 9, 2021, September 15 and/or December 21, 2021), to Plaintiffs' undying requests for the identity and other information about the owner of the subject loan.  HHL also violated 12 U.S.C. § 2605(k)(1)(E) by failing to fulfill its obligation to comply with 12 C.F.R. 1026.36(d)(2)(i)(A); 12 C.F.R. 1024.35(e); and/or 12 C.F.R. 1024.38(b)(1) – all of which are "obligations found by the Bureau of Consumer Financial Protection

regulations, regulations which are appropriate to carry out the consumer protection purposes of 12 U.S.C. § 2605.

79. HHL's failure to provide a timely response to Plaintiffs' April 7, 2021, September 11, 2021, and December 10, 2021 requests for the identity, address and other contact information about the owner of the subject loan within 10 days (excluding legal public holidays, Saturdays, and Sundays) from April 9, 2021, September 15, 2021 and December 21, 2021 constitutes clear violations of the requirements of 12 U.S.C. § 2605(k)(1)(D) and (E).

80. Here, Defendant HHL has violated RESPA, 12 U.S.C. § 2605(k)(1)(D) and (E), and Regulation X, 12 C.F.R. § 1024.36(d)(2)(i)(A) by failing to provide *timely* responses to Plaintiffs repeated request for relevant contact information about the owner of the subject loan.

81. Plaintiffs were harmed by HHL's failure to comply with RESPA, 12 U.S.C. § 2605(k)(1)(D) and (E), and Regulation X, 12 C.F.R. § 1024.36(d)(2)(i)(A), because they incurred the expenses associated with sending the September 11, 2021 and the December 10, 2021 RFI/NOEs - such as their time, postage cost, traveling cost, photocopying costs, and potentially reasonable attorney's fees etc. - but still did not, and has not, timely receive the information or responses to which they were legally entitled to, pursuant to RESPA and Regulation X.

82. Here, HHL is attempting to evade its legal obligations and is effectively stripping the Plaintiffs of their right to timely obtain the identity, address and other contact information about the owner of the subject loan, and subject to the protective framework of RESPA. In fact, HHL has simply disregarded its obligation to timely

19

respond to the Monahans' requests for the identity, address and other contact information about the owner of the subject loan.

83. As shown by the repeated violations alleged in this instant complaint, HHL's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiffs' rights.

84. As a result of its actions, HHL is therefore liable to the Plaintiffs for actual damages, statutory damages, costs, and attorney fees. 12 U.S.C. §§ 2605(f)(1)-(3).

<u>**COUNT IV**</u>
**VIOLATIONS OF 15 U.S.C. §§ 1681, *et seq*.**

**(Failure to furnish correct information on the Plaintiffs' Reports to the CRAs)**

85. Plaintiffs repeat and reallege paragraphs 1 through 49 with the same force and effect as though fully set forth herein.

86. Based on the allegations herein, *supra*, HHL knowingly began furnishing incorrect information pursuant to 15 U.S.C. § 1681s-2(a)(1)(A) regarding Plaintiffs' mortgage loan beginning in January of 2020 and continuing until this day. HHL is furnishing information to the credit reports that:

   a. Does not list all payments;
   b. Reports as 60 days late for the months of January 2020, March, 2020, September 2020, and February 2021; and
   c. Reports as 90 days late for the months of April 2020, October 2020, December 2020, and March 2021.

87. This materially misleading information still being furnished by HHL continues to curtail each Plaintiffs' ability to continue to re-establish their individual credit as well as causing the Plaintiff Michael Monahan to incur $276.00 in mailing and legal costs and the Plaintiff Kevin Monahan $258.00 in mailing and legal costs to send the disputes herein, *supra*.

20

88. Based on the allegations herein HHL continues to furnish the same incorrect information described in Paragraph 80 to Equifax, Experian, and TransUnion on Plaintiffs' Credit Reports.

89. The continued reporting referenced in Paragraph 80 by HHL is being made despite receipt of the disputes from Equifax and TransUnion described herein in violation of 11 U.S.C. § 1681s-2(a)(1)(B) as to Plaintiff Kevin Monahan.

90. The continued reporting referenced in Paragraph 80 by HHL is being made despite receipt of the disputes from Equifax and TransUnion described herein in violation of 11 U.S.C. § 1681s-2(a)(1)(B) as to Plaintiff Michael Monahan.

91. The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

92. As a result of each and every willful violation of the FCRA committed by HHL as to the HHL Tradeline on Plaintiff Kevin Monahan's Credit File with Equifax and TransUnion as well as the HHL Tradeline on Plaintiff Michael Monahan Credit File with Equifax and TransUnion, Plaintiff Kevin Monahan and Plaintiff Michael Monahan are each entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from HHL.

## COUNT V
## VIOLATIONS OF FLA. STAT. § 559.72

93. Plaintiffs repeat and reallege paragraphs 1 through 49 with the same force and effect as though fully set forth herein.

## SUMMARY OF FCCPA CLAIMS

94. The FCCPA's goal is to "provide the consumer with the most protection possible."
*See LeBlanc* at 1192 (citing Fla. Stat. § 559.552).

95. The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

96. "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. §559.77(2).

97. Plaintiffs are each a "consumer" as defined by Florida Statute §559.55(8) asserting claims against HHL as a "debt collector" and "creditor"within the meaning of Florida Statute §559.55(7) as set forth, *infra.*

98. As consumers, Plaintiffs each have a private right of action against Nationstar pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

99. At all times relevant to this action, HHL is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

100. HHL violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate, or asserting the existence of some other legal right when Defendant knew that right

did not exist.

101.     Specifically, Plaintiffs called each month to advise Defendant that the monthly payment was in excess of the agreed upon amount and to remind Defendant that he paid his taxes and insurance separately.

102.     Additionally, HHL received the insurance policy information from USAA, Plaintiffs' insurance provider which also indicated that Plaintiffs paid for the insurance separately.

103.     Although HHL verbally agreed to correct these errors, they failed to do so and continued to attempt to collect amounts above and beyond what they were authorized to collect each month until December 2020.

104.     "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

105.     As a result of HHL's aforementioned violations, Plaintiff suffered damages,

including but not limited to, time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment in their

favor, jointly and severally, against HHL for: actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other or further relief as the Court deems proper.

### IMPACT AND DAMAGES ON THE PLAINTIFF

106.     Due to HHL's actions, Plaintiffs were wrongfully held in a delinquent status on the Loan for a significant period of time and have suffered unwarranted harm to their credit rating and a significant delay in the rehabilitation of their credit.

107.     HHL's improper actions have further caused Plaintiffs to suffer from other damages including:

a.   Legal fees and expenses to submit disputes, requests for information and notices of error to HHL in an attempt obtain information and seek HHL's compliance with the terms of state and federal law and guidelines;

b.   Denial of credit for personal and business expenses;

c.   Severe emotional distress driven by HHL's actions and by fear that HHL's refusal to properly handle the servicing of the subject loan and error resolution process related to the Loan could have resulted in a judgment of foreclosure, and loss of their Home, which resulted in frustration, loss of sleep, anxiety, embarrassment, and other significant emotional distress; and,

d.   Increased costs and payments due under the Loan along with delinquency related charges.

**WHEREFORE**, Plaintiffs KEVIN P. MONAHAN and MICHAEL T. MONAHAN pray for an Order as follows:

A. Entering judgment in favor of Plaintiffs and against Defendant;

B. Awarding Plaintiffs their actual damages and statutory damages as allowed under RESPA, 15 U.S.C. 1681n(a)(1) and Fla. Stat. § 559.77;

C. Awarding Plaintiffs punitive damages against HHL pursuant to 15 U.S.C. § 1681n(a)(2) for the allegations contained in Count Four as to each Plaintiff and pursuant to Fla. Stat. § 559.77 for the allegations in Count Five ;

E. Awarding Plaintiffs attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

F. Granting all such further and other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues.

Respectfully submitted,

Dated: June 13, 2022

Respectfully submitted,

**THE ADVOCACY GROUP**
Jessica L. Kerr
Fla. Bar. No. 92810
100 S. Biscayne Blvd, Suite 300
Miami, FL 33131
Telephone: (954) 282-1858
Facsimile: (954) 282-8277
jkerr@advocacypa.com

*Attorney for Plaintiffs*